1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                        SOUTHERN DISTRICT OF CALIFORNIA

10

11    UNITED STATES OF AMERICA,            Case No.: 3:19-mj-23193-FAG-BTM

12     v.                                  **ORDER OF AFFIRMANCE**

13

14    ERASMO VAZQUEZ-SANCHEZ,

                                Defendant.

15

16        Before the Court is Defendant Erasmo Vazquez-Sanchez's ("Defendant")

17  appeal from his misdemeanor conviction and the resulting judgment imposed by

18  the United States Magistrate Judge following Defendant's guilty plea to one count

19  of improper entry by alien in violation of 8 U.S.C. § 1325(a)(1).  The Court has

20  jurisdiction to review the conviction and judgment pursuant to 18 U.S.C. § 3402.[1]

21  For the reasons discussed below, the Court affirms Defendant's conviction and the

22  judgment entered thereon.

23                                 **BACKGROUND**

24        On August 2, 2019, Defendant, who is a citizen of Mexico, was arrested by

25  a U.S. Border Patrol agent approximately one-and-a-half miles west of the San

26

27

28  [1] The Magistrate Judge had jurisdiction over the underlying matter pursuant to 18
    U.S.C. § 3401(a).

1

1    Ysidro, California Port of Entry.[2]   (ECF No. 1, at 2.)   On August 5, 2019, the

2    Government filed a complaint charging Defendant with misdemeanor attempted

3    improper entry by an alien in violation of 8 U.S.C. § 1325(a)(1) and Defendant

4    made his initial appearance before the Magistrate Judge that same day.  (ECF No.

5    5; *see also* ECF No. 4 (Detention Order).)

6          On August 8, 2019, Defendant, represented by appointed counsel, appeared

7    before the Magistrate Judge for a change of plea hearing, at which he pled guilty

8    to one charge of improper entry of an alien in violation of 8 U.S.C. § 1325(a)(1).

9    (ECF Nos. 7, 13.)   Prior to Defendant's change of plea, the Magistrate Judge

10   engaged Defendant in a colloquy and advised him of his constitutional rights and

11   confirmed that he wished to waive those rights by pleading guilty.  (ECF No. 13, at

12   3-6, 8.)   The Magistrate Judge also advised Defendant of the elements of the

13   misdemeanor offense of improper entry by alien under 8 U.S.C. § 1325(a)(1) and

14   the maximum penalty thereunder.  (*Id.* at 7-10.)

15         Specifically, the Magistrate Judge advised Defendant that the elements of

16   his charge were:

17   First, defendant was at the time of the defendant's attempted entry into the
18   United States an alien; that is, a person who is not a natural-born or
     naturalized citizen or national of the United States.  Second, the defendant
19   had the specific intent to enter the United States at a time and place other
     than designated by immigration officers. Third, the defendant also had the
20   specific intent to enter the United States free from official restraint, meaning
21   the defendant intended to enter without being detected, apprehended, or
     taken into custody by Government authorities so that he or she could roam
22   freely in the United States of America.  And fourth, defendant did something
23   that was a substantial step towards committing the crime that strongly
     corroborated the defendant's intent to commit the crime.
24

25   (*Id.* at 9-10.)  Defendant's counsel objected to the Magistrate Judge's recitation of

26

27   _____

28   [2] The Defendant was arrested "approximately 20 yards north of the United
     States/Mexico International Boundary."  (ECF No. 1, at 2.)

1 the charge's elements, however, arguing "there should be an element as to the
2 alienage; that is, a *mens rea* of knowing." (*Id.* at 10-12.)   After hearing the
3 Government's response to Defendant's objection, the Magistrate Judge offered to
4 allow the parties to submit written briefing on the issue of whether Defendant's
5 knowledge of his alienage was a proper element of the § 1325(a)(1) charge. (*Id.*
6 at 14-15.)   Counsel for Defendant rejected this offer, however, insisting that
7 Defendant "want[ed] to go forward with [his] plea and be sentenced to time served
8 today." (*Id.* at 15-18.)  To avoid further debate, the Government offered to include
9 knowledge of alienage as a part of Defendant's plea "without [the Court] finding
10 that this is actually a required element of the offense." (*Id.* at 18.)  Ironically, when
11 the Magistrate Judge expressed concerns about the Government's offer to include
12 knowledge of alienage in the elements of the charge if it was not actually a proper
13 element thereof, Defendant's counsel asserted that the Ninth Circuit's pattern jury
14 instructions indicate that knowledge of alienage is not an element of § 1325(a)(1).
15 (*Id.* at 18-19 ("I mean, the Ninth Circuit has a jury instruction on this.  It's not in
16 there. So, you know, to the extent that there's a word on the issue, the Ninth Circuit
17 has indicated that it's not an element.  But is there a binding decision on this Court
18 or the District Court?  No.").)

19    The Magistrate Judge ultimately concluded at the Rule 11 hearing that
20 Defendant's knowledge of his alienage at the time of the offense was not an
21 element of the § 1325(a)(1) charge and repeated the original four elements of the
22 charge. (*Id.* at 19-20.)  Defendant testified that he understood the Magistrate
23 Judge's recitation of the elements of his charge. (*Id.* at 20.)  Defendant further
24 testified as to the factual basis of his charge, namely that he: (i) "crosse[ed] the
25 border from Mexico into the United States at a place other than a designated Port
26 of Entry"; (ii) was not "a citizen or national of the United States of America"; (iii)
27 "intend[ed] to enter the United States at a place other than a designated Port of
28 Entry"; and (iv) "intend[ed] to enter the United States without being detected,

1 | apprehended, or taken into custody by Government authorities so that [he] could

2 | roam freely in the United States[.]"  (*Id.* at 20-22.)  After finding that Defendant's

3 | plea was made knowingly, voluntarily, and upon a sufficient factual basis, the

4 | Magistrate Judge accepted Defendant's guilty plea and sentenced him to time-

5 | served.  (*Id.* at 23-26.)  The Magistrate Judge then informed Defendant of his right

6 | to appeal his conviction and sentencing.  (Id. at 26-27.)  That same day, the

7 | Magistrate Judge entered judgement (the "Judgment") against Defendant.  (ECF

8 | No. 8.)

9 | On August 13, 2019, Defendant timely filed his notice of appeal as to the

10 | Judgment.  (ECF No. 10.)

## STANDARD OF REVIEW

11 |

12 | In the instant appeal, Defendant argues that the Judgment and his underlying

13 | conviction must be vacated because: (1) § 1325(a)(1) is unconstitutional because

14 | it violates the non-delegation doctrine; (2) § 1325(a)(1) is unconstitutionally vague;

15 | and (3) the Magistrate Judge violated Federal Rule of Criminal Procedure Rule

16 | 11(b)(1)(G) by failing to advise Defendant of the correct elements of his charged

17 | offense and therefore his guilty plea was not knowing and voluntary.  (ECF No. 16,

18 | at 2.)  The adequacy of the Magistrate Judge's recitation of the elements of a

19 | charged offense is reviewed *de novo.  See United States v. Pena*, 314 F.3d 1152,

20 | 1155 (9th Cir. 2003) ("The adequacy of a Rule 11 plea colloquy is subject to *de*

21 | *novo* review." (citations omitted)).   Because Defendant failed to raise his

22 | constitutional challenges prior to the instant appeal, they normally would be

23 | reviewed for plain error.  *United States v. Chi Mak*, 683 F.3d 1126, 1133 (9th Cir.

24 | 2012) ("We review the constitutionality of a statute as a matter of law *de novo*. . . .

25 | However, constitutional issues not originally raised at trial are reviewed for plain

26 | error." (citations omitted)); *see also* Fed. R. Civ. P. 52(b).  Nevertheless, because

27 | Defendant's instant constitutional challenges fail regardless of the standard of

28 | review, the Court has utilized the more favorable *de novo* standard requested by

1  Defendant.[3]

2  **DISCUSSION**

3      Section 1325(a)(1) provides that it is a misdemeanor for "[a]ny alien . . . [to]

4  enter[ ] or attempt[ ] to enter into the United States at any time or place other than

5  as designated by immigration officers[.]"  8 U.S.C. § 1325(a)(1).  Defendant argues

6  that § 1325(a)(1) violates the non-delegation doctrine because it improperly grants

7  immigration officers "the discretion to determine a criminal statute's scope" without

8  an "intelligible principle . . . to guide and constrain the exercise of [that] discretion."

9  (ECF No. 16, at 16 (internal quotations and citations omitted)).  Specifically,

10 Defendant argues that § 1325(a)(1) permits any immigration officer to unilaterally

11 designate the times and places where entry into the United States is lawful without

12 "guidance . . . about what places they should designate for entry."  (*Id.* at 17; *see*

13 *also* ECF No. 19, at 5 ("[W]ith § 1325(a)(1), Congress delegated to 'immigration

14 officers' a choice: they could designate for entry (1) physical ports; (2) geographic

15 areas; or (3) something else entirely.  Congress, however, did not provide

16

17

18 [3] Despite admitting that he "did not raise these constitutional issues below[,]"
   Defendant argues the Court should review them *de novo.* (ECF No. 16, at 5; ECF

19 No. 19, at 6.)  In support, Defendant cites *United States v. Parker*, 761 F.3d 986
   (9th Cir. 2014) and *United States v. Gilbert*, 813 F.2d 1523 (9th Cir. 1987).  Yet

20 neither *Parker* nor *Gilbert* directly addressed the standard of review of
   constitutional challenges raised for the first time on appeal and therefore they are

21 inapposite.  *See United States v. Corrales-Vazquez*, 931 F.3d 944, 954 (9th Cir.

22 2019) ("Cases are not precedential for propositions not considered or for questions
   which merely lurk in the record." (internal quotations, citations, and alterations

23 omitted)).  In the alternative, Defendant argues that "the [G]overnment has waived

24 its reliance on the plain-error doctrine by not briefing it." (ECF No. 19, at 6-7 (citing
   *United States v. Castillo-Marin*, 684 F.3d 914, 919 (9th Cir. 2012).)  While

25 Defendant overstates the holding of *Castillo-Marin*, the Court acknowledges that

26 the Government's briefing does not delineate the application or consequence of
   the plain error standard to the instant constitutional challenges.  (See also ECF

27 No. 18, at 9 ("Under any standard, . . . [Defendant] has not shown that § 1325(a)(1)

28 is unconstitutional.").)

1    immigration officers guidance in how they should make that choice.").)

2        Courts in this District have resoundingly rejected the non-delegation

3    arguments presently raised by Defendant in the context of § 1325(a)(1).  *See, e.g.,*

4    *United States v. Nunez-Soberanis*, 406 F. Supp. 3d 835, 839-40 (S.D. Cal. Aug.

5    30, 2019); *United States v. Benito-Mendoza*, 2020 WL 206183, at *3 (S.D. Cal.

6    Jan. 13, 2020); *United States v. Zeferino-De Jesus*, 2020 WL 94373, at *7 (S.D.

7    Cal. Jan. 7, 2020); *United States v. Chavac-Boror*, 2019 WL 5967969, at *1-3 (S.D.

8    Cal. Nov. 12, 2019); *United States v. Revolorio-Tambito*, 2019 WL 5295086, at *1-

9    3 (S.D. Cal. Oct. 17, 2019); *United States v. Ramos-Moran*, 2019 WL 4393670, at

10   *1-2 (S.D. Cal. Sept. 13, 2019).  Like the Court in *Revolorio-Tambito*, this Court

11   finds "the type of delegation under § 1325(a) to be analogous to the delegation

12   [upheld] in *Gundy*[,]" where "Congress determined that the [sex offender]

13   registration requirements applied to pre-Act offenders but left the practical

14   problems of implementation and when pre-Act offenders would be required to

15   register to the Attorney General."  *Revolorio-Tambito*, 2019 WL 5295086, at *2-3

16   (citing *Gundy v. United States*, ___ U.S. ___, 139 S. Ct. 2116, 2121 (2019)).  Here,

17   "Congress determined that there should be a proper location and procedure for an

18   alien to seek admission to the United States."  *Id.* at *2 (citing 8 U.S.C. §

19   1225(a)(3)).  "Congress also established penalties for failing to follow those

20   procedures."  *Id.* (citing 8 U.S.C. §§ 1321–1330).  "The details of where and when

21   the ports of entry would be located was left to the executive agency responsible

22   for staffing the facilities."  *Id.*; *see also* 8 C.F.R. § 235.1 ("Application to lawfully

23   enter the United States shall be made in person to an immigration officer at a U.S.

24   port-of-entry when the port is open for inspection, or as otherwise designated in

25   this section.").  Further, because "[p]orts of entry can only be designated or de-

26   designated by the Secretary of Homeland Security subject to the Administrative

27   Procedures Act[,] . . . [t]o interpret § 1325(a) to permit a border patrol agent to

28   designate a portion of the border fence 'on a whim' is in direct conflict with

1   Congress's clear statutory scheme." *Revolorio-Tambito*, 2019 WL 5295086, at *2

2   (citing 8 C.F.R. § 100.4(a)).  Moreover, "[t]he practical issues of where and when

3   ports of entry are open does not alter the scope of conduct considered criminal

4   under § 1325(a)" because "[t]he type of conduct prohibited remains the same

5   regardless of what physical piece of ground a port of entry is on." *Id.*; *see also*

6   *Zeferino-De Jesus*, 2020 WL 94373, at *7 ("Closing ports or restricting hours of

7   operation may make it more cumbersome for aliens to enter legally, but it does not

8   create new or different criminal liability.").   Defendant has therefore failed to

9   demonstrate that § 1325(a)(1) violates the non-delegation doctrine.

10        Defendant's vagueness argument, which also relies upon his flawed

11   assertion that § 1325(a)(1) allows "immigration officers [to] alter what is designated

12   for entry without a moment's notice[,]" (ECF No. 16, at 25), has similarly been

13   rejected by other courts in this district.  *See, e.g., Nunez-Soberanis*, 406 F. Supp.

14   3d at 840-41; *Benito-Mendoza*, 2020 WL 206183, at *3; *Zeferino-De Jesus*, 2020

15   WL 94373, at *7-8; *Chavac-Boror*, 2019 WL 5967969, at *3-4; *Revolorio-Tambito*,

16   2019 WL 5295086, at *3-4; *Ramos-Moran*, 2019 WL 4393670, at *2-3.   As

17   previously discussed, Defendant's underlying assertion that an individual

18   immigration officer can unilaterally (de)designate ports of entry is incorrect.

19   Indeed, Defendant does not allege that his conviction – or any other conviction

20   under § 1325(a)(1) – resulted from any individual immigration official's unilateral

21   de-designation of a port of entry.  *See Hill v. Colorado*, 530 U.S. 703, 733 (2000)

22   ("[S]peculation about possible vagueness in hypothetical situations not before the

23   Court will not support a facial attack on a statute when it is surely valid in the vast

24   majority of its intended applications.").   Thus, "[g]iven the formal procedures

25   required to designate and de-designate a port of entry, . . . the Court finds that

26   Section 1325(a)(1) is surely valid in the vast majority, if not all, of its intended

27   applications and Defendant's hypothetical argument is insufficient to support a

28   facial attack." *Nunez-Soberanis*, 406 F. Supp. 3d at 841. Further, Defendant has

1    failed to otherwise demonstrate that § 1325(a)(1) "fails to provide people of

2    ordinary intelligence a reasonable opportunity to understand what conduct it

3    prohibits" or "authorizes or even encourages arbitrary and discriminatory

4    enforcement." *Hill*, 530 U.S. at 732 (citations omitted).  Defendant has therefore

5    failed to demonstrate that § 1325(a)(1) is void for vagueness.

6           Finally, Defendant's argument that the Magistrate Judge violated Federal

7    Rule of Criminal Procedure Rule 11(b)(1)(G), and therefore his guilty plea was not

8    knowing and voluntary, is based on his argument that a defendant's knowledge of

9    his alienage is an element of attempted improper entry in violation of § 1325(a)(1).

10   (*See* ECF No. 16, at 28-34.)  Like his constitutional challenges, Defendant's instant

11   knowledge of alienage argument has been consistently rejected by other courts in

12   this district.  *See, e.g., Nunez-Soberanis*, 406 F. Supp. 3d at 841-45; *Benito-*

13   *Mendoza*, 2020 WL 206183, at *3-4; *Zeferino-De Jesus*, 2020 WL 94373, at *8-9;

14   *Chavac-Boror*, 2019 WL 5967969, at *4-5; *Revolorio-Tambito*, 2019 WL 5295086,

15   at *4-7; *Ramos-Moran*, 2019 WL 4393670, at *4-5.  Those courts specifically

16   rejected Defendant's argument that the Supreme Court's decision in *Rehaif v.*

17   *United States*, ___ U.S. ___, 139 S. Ct. 2191 (2019), compels a finding that

18   knowledge of alienage is an element of § 1325(a)(1).  *See, e.g., Zeferino-De*

19   *Jesus*, 2020 WL 94373, at *8 ("[U]nlike the statute at issue in *Rehaif*, the element

20   of alienage in a § 1325 charge does not criminalize otherwise innocent conduct.

21   The conduct that § 1325 criminalizes is attempting to cross the border outside the

22   port of entry, free from official restraint.  Any person, whether a United States

23   citizen or an alien, who engages in such conduct violates the laws of the United

24   States." (internal quotations and citations omitted)); *see also* 19 U.S.C. § 1459(a).

25   This Court agrees with the reasoning of those prior decisions.

26          Similarly, at least one court has rejected Defendant's mistake-of-fact

27   argument that, because a conviction for *attempted* illegal entry under § 1325(a)(1)

28   requires proof that the defendant had the specific intent to commit the completed

1  crime, this requires proof that the defendant knew he was an alien at the time of

2  the offense.  *See Zeferino-De Jesus*, 2020 WL 94373, at *8.  This Court agrees

3  with the reasoning of that court and repeats it here:

> Defendant also argues that a defendant who believes he or she is a United
> States citizen at the time of the alleged offense cannot be found guilty of a
> violation of 8 U.S.C. § 1325(a)(1) because "'a defendant should be treated
> in accordance with the facts as he supposed them to be,' not as they actually
> are."  ECF No. 23-1, at 24 (quoting *United States v. Quijada*, 588 F.2d 1253,
> 1255 (9th Cir. 1978)).  *Quijada* does not stretch as far as Defendant would
> like.  The issue in *Quijada* was whether the defendant, who had the intent to
> distribute cocaine, could avoid conviction because the substance he
> distributed was not in fact cocaine.  *Id.* at 1255.  A defendant can be
> convicted of attempted illegal entry under § 1325 if he or she has the specific
> intent to enter the country free from official restraint.  *United States v.*
> *Lombera-Valdovinos*, 429 F.3d 927, 929 (2005).  *Quijada* cannot be
> plausibly read to hold that a defendant could avoid conviction under § 1325
> if he or she had the specific intent to enter the country free from official
> restraint, merely because the defendant had a mistaken belief that he or she
> was not an alien at the time of the offense.

16  *Zeferino-De Jesus*, 2020 WL 94373, at *8.

17       Under this same reasoning Defendant's references to the Ninth Circuit's

18  holding in *United States v. Smith-Baltiher*, 424 F.3d 913 (9th Cir. 2005), which

19  concerned in relevant part the propriety of excluding evidence that the defendant

20  "reasonably believed he was a U.S. citizen when he attempted reentry" into the

21  United States without consent in violation of 8 U.S.C. § 1326, are inapposite.

22  *United States v. Smith-Baltiher*, 424 F.3d 913, 923 (9th Cir. 2005).  In *Smith-*

23  *Baltiher*, the Ninth Circuit held that it was improper to exclude such evidence

24  because it could support a defense that would negate the scienter element of a

25  violation of § 1326, namely that "the defendant had the purpose, *i.e.* conscious

26  desire, to reenter the United States without the express consent of the Attorney

27  General."  *Id.* at 923-25.  Defendant has made no similar showing that a lack of

28  knowledge of his alienage at the time of the relevant offense would have affected

the scienter elements of his charge under § 1325(a)(1), namely his "intent to enter the United States at a time and place other than designated by immigration officers . . . [or] enter the United States free from official restraint[,]" nor could he plausibly do so given his clear testimony at the Rule 11 hearing. (*See* ECF No. 13, at 9-10, 21.)   Nor has Defendant demonstrated that the failure to require a showing of knowledge of alienage in connection with attempted illegal entry under § 1325(a)(1) will allow for the prosecution of inculpable conduct.  *See United States v. Gracidas-Ulibarry*, 231 F.3d 1188, 1193 (9th Cir. 2000) ("The reason for requiring specific intent for attempt crimes is to resolve the uncertainty whether the defendant's purpose was indeed to engage in criminal, rather than innocent, conduct." (citations omitted)).  Accordingly, the Court concludes that knowledge of alienage is not an element of § 1325(a)(1) and therefore Defendant has failed to demonstrate the Magistrate Judge committed any error in their Rule 11 plea colloquy with Defendant.

## CONCLUSION

Based upon the foregoing, the Court **AFFIRMS** Defendant's conviction by the Magistrate Judge and the Judgment (ECF No. 8) entered thereon.

**IT IS SO ORDERED.**

Dated: May 11, 2020

Honorable Barry Ted Moskowitz
United States District Judge